UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION



KANICA HARRIS,

        Plaintiff,                        Case No. 10-14172

v.                                      Paul D. Borman
                                      United States District Judge

HERITAGE HOME HEALTH CARE,       Mona K. Majzoub
ANTHONIA BAMISHE                        United States Magistrate Judge
and TAIWO OGUNLEYE

        Defendant(s).
_____/

## OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF NO. 21)

This matter is before the Court on Defendants' Motion for Partial Summary Judgment. (ECF No. 21.) Plaintiff filed a Response. (ECF No. 33.) Defendants did not file a reply. The Court held a hearing on March 9, 2012. Following the hearing, the parties informed the Court that there were engaged in settlement negotiations. On or about March 19, 2013, the Court was informed that the parties have been unable to reach a settlement. Now, for the reasons that follow, the Court GRANTS IN PART Defendants' Motion for Partial Summary Judgment.

### I. INTRODUCTION

In May 2005, Kanica Harris ("Harris") began working for Heritage Home Health Care ("Heritage") as a medical biller. Plaintiff's main responsibility was to ensure that Defendant Heritage received insurance and Medicare reimbursements for medical treatment provided to patients. In April 2008, Taiwo Ogunleye ("Ogunleye") joined Heritage and became a fifty percent

1

co-owner of Heritage with Anthonia Bamishe ("Bamishe").

In late 2008, Defendants realized there were an unusually large number of bill denials from Medicare which Plaintiff had not appealed. On December 2, 2008, Defendant Bamishe left a note for Plaintiff regarding the issue. On December 3, 2008, Defendant Ogunleye and Defendant Bamishe met with Plaintiff to address the issue. Defendant Bamishe gave Plaintiff a memorandum assigning Plaintiff certain daily and monthly tasks to resolve the billing problem. Prior to this early December performance issue, and as recently as May, 2008, Plaintiff had received very good, indeed "outstanding," performance reviews. (ECF No. 33, Pl.'s Resp. Ex. D, September 14, 2011 Deposition of Anthonia Bamishe, 71-72.)

On December 9, 2008, Plaintiff reported to Defendant Bamishe that Defendant Ogunleye had sexually harassed Plaintiff. (ECF No. 1, Compl. ¶ 23.) Plaintiff testified at her deposition that Defendant Ogunleye would rub his hands on Plaintiff's upper arms, shoulders, thighs, and under her skirt; that Defendant Ogunleye would comment to Plaintiff that Plaintiff was afraid to have sex with him; that on April 12, 2008, Defendant Ogunleye attempted to pull down the top of Plaintiff's dress; that on June 15, 2008, Defendant Ogunleye told Plaintiff's coworkers, in reference to Plaintiff and in Plaintiff's presence, "look at that b****, she wants me to f*** her;" that on August 16, 2008, Defendant Ogunleye followed Plaintiff into the women's bathroom, exposed his erect penis, and said he wanted Plaintiff to perform oral sex on him; and that on December 15, 2008, Defendant Ogunleye called Plaintiff at work and said he loved her. (ECF No. 33, Pl.'s Resp. Ex. A, June 7, 2011 Deposition of Kanica Harris, 34-36; Compl. ¶¶ 16-22.)

Ursula Rious, a co-worker of Plaintiff at Heritage, testified that she observed Defendant Ogunleye rub Plaintiff's arms, that Defendant Ogunleye commented to Plaintiff and others about

Plaintiff's breasts being large and commented to Ms. Rious and others that Plaintiff "just wanted [Ogunleye] to f*** her." (ECF No. 33, Pl.'s Resp. Ex. B, Sept. 16, 2011 Deposition of Ursula Rious, 18-19.) Ms. Rious testified that she encouraged Plaintiff to file a complaint with the EEOC. *Id.* at 20.

Erika Smith, another Heritage employee, also heard Defendant Ogunleye comment that Plaintiff dressed like she "wanted [Ogunleye] to f*** her." (ECF No. 33, Pl.'s Resp. Ex. E, July 26, 2011 Deposition of Erika Smith, 19.) Ms. Smith testified that this was said in a joking manner and that Plaintiff did not indicate that she was upset with the comment. *Id.* at 21-22. Another co-worker, Erika Posey, testified that Plaintiff told her that Defendant Ogunleye pushed Plaintiff into the bathroom at work and tried to show Plaintiff his "private parts." (ECF No. 33, Ex. F, August 16, 2011 Deposition of Erika Posey, 24, 116-17.)

After receiving Plaintiff's complaints on December 9, 2008, Defendant Bamishe instituted a new sexual harassment policy, installed surveillance cameras, decreased Defendant Ogunleye's time in the office and required Plaintiff to report to Monica Miller in an effort to decrease the necessity of contact between Defendant Ogunleye and Plaintiff. (ECF No. 22-3, Def.'s Mot. App. Sept. 14, 2011 Deposition of Anthonia Bamishe, Pg ID 639-40; ECF No. 22, Def.'s Mot. App., August 16, 2011 Deposition of Erika Posey, Pg ID 199.)

On January 24, 2009, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC).[1] On February 11, 2009, Defendant Bamishe fired Plaintiff for insubordination, poor attitude, and for directing derogatory remarks toward Defendant Bamishe.

---

[1] Plaintiff has submitted a Notice of Charge of Discrimination dated January 26, 2009, with a response required February 16, 2009. Defendant has submitted a Notice of Charge of Discrimination dated February 23, 2009, with a response required March 16, 2009.

3

Plaintiff received her right to sue letter on August 11, 2010, and this action followed.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." Fed.R.Civ.P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. V. Catrett*, 477 U.S. 317, 322 (1986). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of genuine issue of material fact." *Id.* at 323; *see also Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 771 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this

4

evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the nonmoving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the nonmoving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The nonmoving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). The rule requires that nonmoving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. Of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the nonmoving party must produce more than a scintilla of evidence to survive summary judgment).

### III. ANALYSIS

Defendants move for partial summary judgment on the claims advanced in Plaintiff's Complaint. Defendant Bamishe moves for summary judgment on all six Counts of Plaintiff's Complaint. The Court will grant the motion as to Defendant Bamishe on Counts I, II, III, and V and deny the motion as to Defendant Bamishe on Counts IV and VI. Defendant Ogunleye moves for summary judgment on Counts I, III, V and VI. The Court will grant Defendant Ogunleye's motion for summary judgment on Counts I, III and V and deny Defendant Ogunleye's motion for summary judgment on Count VI. Defendant Heritage moves for summary judgment on Counts IV, V and VI. The Court will deny Defendant Heritage's motion on Counts IV, V and VI. Accordingly, just to clarify, the case will proceed to trial against Defendant Heritage on all Counts of the Complaint,

Counts I, II, III, IV, V and VI. The case will proceed against Defendant Ogunleye on Counts II, IV and VI. The case will proceed against Defendant Bamishe on Counts IV and VI.

### A. Individual Liability under Title VII ( Counts I, III and V Against Defendants Bamishe and Ogunleye)

Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer to discriminate against an individual because of that individual's sex. 42 U.S.C. § 2000e-2(a)(1). For purposes of Title VII, an employer is "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person . . . ."[2] 42 U.S.C. § 2000e(b).

It is not disputed that Defendant Heritage is an employer under Title VII. Plaintiff, however, seeks to hold Defendants Bamishe and Ogunleye liable as employers in their individual capacities on the theory that as co-owners and supervisors they are Defendant Heritage's agents. In *Wathen v. Gen. Elec. Co.*, 115 F.3d 400 (6th Cir. 1997), the Sixth Circuit held that "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." *Id.* at 405.

Notwithstanding the Sixth Circuit's holding in *Wathen*, Plaintiff seeks to hold Ogunleye and Bamishe individually liable under Title VII. The Court notes that Plaintiff's Complaint in Counts I and III, alleges that Defendant Heritage Home Health Home Care is an "employer" within the meaning of Title VII. Compl. ¶¶ 31, 47. Plaintiff never alleges in her Complaint that Defendants Ogunleye and Bamishe are "employers" within the meaning of Title VII. Despite not pleading that Ogunleye and Bamishe are "employers" within the meaning of Title VII, and despite the clear

---

[2] There are some exceptions to the definition of employer, but none are applicable in the instant case.

6

holding of *Wathen* that individuals cannot be held liable under Title VII, Plaintiff suggests in her response brief that Ogunleye and Bamishe should be considered employers for purposes of Title VII liability because they have an ownership interest in Defendant Heritage and acted as "agents" of Defendant Heritage by exercising significant control over the conditions of Plaintiff's employment. (ECF No. 33, Pl.'s Resp. 10-11.)

Plaintiff cites no Sixth Circuit law to support a finding of individual liability under Title VII based on such an interpretation of the term "agent" as used in the definition of "employer" under Title VII and several courts that have directly addressed the issue have refused to find individual liability under Title VII based on "ownership" of the employing entity or similar "alter ego" theories of liability. *See EEOC v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1282 n. 11 (7th Cir. 1995) (finding that the issue of individual liability for a judgment under an alter ego theory is separate and distinct from the issue of whether that doctrine could serve in the first instance as an independent basis of individual liability under Title VII, finding no good reason to depart from the widely accepted refusal to permit individual capacity claims under Title VII and refusing to find the sole shareholder of the employing entity liable as individual under Title VII); *Dearth v. Collins*, 441 F.3d 931, 933-34 (11th Cir. 2006) (agreeing with the Seventh Circuit in *AIC Security Investigations*, and concluding that "the alter ego doctrine does not create an exception to the rule against individual employee liability in Title VII cases"). The Sixth Circuit, in *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 362 n. 2 (6th Cir. 2001), while not directly deciding the issue, noted that while there was some support in other jurisdictions for *official* capacity suits under Title VII based on an alter ego theory, such facts were not pled in *Little* and reiterating that the law in the Sixth Circuit was clear that there could be no *individual* capacity suits under Title VII. Expressly noting that the Sixth

Circuit had never upheld official capacity liability based on an alter ego theory under Title VII, the Sixth Circuit cited the Tenth Circuit's decision in *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir. 1993) as an example of a case appearing to embrace such a theory. Notably, the Tenth Circuit in *Sauers*, while allowing for the possibility of an official capacity suit (which in any event operates as a suit against the employer), reiterated that "[u]nder Title VII, suits against individuals must proceed in their official capacity; individual capacity suits are inappropriate." *In accord Russell v. Bronson Heating and Cooling*, 345 F. Supp. 2d 761, 782 (E.D. Mich. 2004) (Borman, J.) (rejecting the claim that individual was the "alter ego" of employing entity and therefore individually liable under Title VII as inconsistent with the Sixth Circuit's holding and reasoning in *Wathen* and as inconsistent with Congress' intent not to impose individual liability under Title VII); *Simmons v. Johnston*, No. 08-822, 2009 WL 3153039, at *6 (W.D. Mich. Sept. 24, 2009) (agreeing with the Eleventh Circuit's reasoning in *Dearth*, *supra*, and the district court in *Russell*, *supra*, that there could be no individual liability under Title VII on the president and sole shareholder under an alter ego theory); *Bell v. Koerten*, No. 99-1040, 1999 WL 971282, at * 2 (N.D. Ill. Oct. 21, 1999) (relying on the reasoning of *AIC Securities*, *supra*, and collecting cases rejecting individual liability claims under Title VII against owners and sole shareholders of small business because there is no "owner exception" to the rule that individual supervisors cannot be held liable under Title VII). This Court finds these cases to be in line with the more reasoned interpretation of the use of the term "agent" in the definition of employer in Title VII, i.e. that "[t]he obvious purpose" in including the agent provision "was to incorporate respondeat superior liability into the statute." *Wathen*, 115 F.3d at 406 (internal citation and quotation marks omitted). Moreover, as the Sixth Circuit has recognized, "Congress' act of providing only equitable relief [reinstatement and back pay] to a complainant

[under Title VII] suggests that Congress intended that only employing entities, not supervisors, be subject to suit." *Hiler v. Brown*, 177 F.3d 542, 546-47 (6th Cir. 1999) (citing *Wathen*, 115 F.3d at 406).

Because Plaintiff fails to support her contrary interpretation of Title VII with any relevant Sixth Circuit law, the Court declines to adopt this reasoning and holds that Bamishe and Ogunleye cannot be held liable as individuals under Title VII based upon their alleged status as "owners" and "agents" of Defendant Heritage. Accordingly, Counts I, III and V are dismissed as to Defendants Bamishe and Ogunleye. Counts I, III and V will proceed against Defendant Heritage.

### B. Plaintiff's Hostile Work Environment Claim Under the Elliot Larsen Civil Rights Act (Count IV)

The Sixth Circuit reviews claims brought under the Elliot Larsen Civil Rights Act, Mich. Comp. Laws § 37.2201, *et seq.* (ELCRA), under the same standard as claims brought under Title VII. *White v. Baxter Health Care Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). The scope of liability under the two statutes, however, is different. The Michigan Supreme Court has explicitly held that, although they "are many times guided in [their] interpretation of the Michigan Civil Rights Act by federal court interpretations of its counterpart federal statute," unlike under Title VII, an individual may be held personally liable under the ELCRA. *Elezovic v. Ford Motor Co.*, 472 Mich. 408, 422, 426 (2005).

Plaintiff claims in Count IV of her Complaint that she has been sexually harassed as a result of a hostile work environment under the ELCRA. Defendants do not seek summary judgment on this Count as to Defendant Ogunleye but do seek summary judgment on this Count as to Defendants Heritage and Bamishe. The five elements necessary to establish a *prima facie* case of sexual

9

harassment based on a hostile work environment are:

> (1) the employee belonged to a protected group;
>
> (2) the employee was subjected to communication or conduct on the basis of sex;
>
> (3) the employee was subjected to unwelcome sexual conduct or communication;
>
> (4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and
>
> (5) respondeat superior.

*Elezovic*, 472 Mich. at 412 n. 4 (citing *Radtke v. Everett*, 442 Mich. 368, 383-83 (1993)). "Respondeat superior liability exists when an employer has adequate notice of the harassment and fails to take appropriate corrective action." *Id.* (citing *Chambers v. Trettco, Inc.*, 463 Mich. 297, 312 (2000)). In their motion, Defendants appear to challenge Plaintiff's ability to establish the element of respondeat superior, i.e. to prove that anyone other than Defendant Ogunleye (who does not move for summary judgment on this Count) can be held liable on Plaintiff's hostile work environment claim.

Individual liability under the ELCRA "applies to an agent who sexually harasses an employee in the workplace." *Id.* at 426. Plaintiff has presented no evidence that Defendant Bamishe sexually harassed Plaintiff. Indeed, Plaintiff has agreed "that Defendant Bamishe did not discriminate against Plaintiff because of her gender and therefore, Plaintiff's [] claims regarding gender discrimination [Counts I and II] against Bamishe must be dismissed." (ECF No. 33, Pl.'s Resp. 9 n. 1.) As to her hostile work environment claim under the ELCRA, however, Plaintiff argues that Defendant Ogunleye was an employer and that because he sexually harassed Plaintiff, Plaintiff can hold both Defendant Bamishe and Defendant Heritage liable under the ELCRA without having to satisfy the

10

*respondeat superior* element of her hostile work environment claim. To support her position, Plaintiff relies on *Radtke v. Everett*, 442 Mich. 368 (1993) in which the Michigan Supreme Court stated that "if an *employer* is accused of sexual harassment, then the respondeat superior inquiry is unnecessary because holding an employer liable for personal actions is not unfair." *Id.* at 397 (emphasis in original). Plaintiff argues that because Ogunleye was the employer who "horrifically sexually harassed" her, she need not demonstrate respondeat superior on her hostile work environment claim as to any Defendant. Based on *Radkte*, it may be that Plaintiff need not establish respondeat superior as to her claim against Defendant Ogunleye - *Radtke* teaches that an employer who is individually accused of sexual harassment can be held liable for his or her personal actions, obviating the need for the respondeat superior inquiry as to that employer in such a case. However, Defendant Ogunleye does not move for summary judgment on the ELCRA hostile work environment claim against him.

Under the ELCRA it is well established that (1) an agent can be held individually liable for violating the Act, *see, e.g. Elezovic*, (2) an employer can be held vicariously liable for an employee's actions if it does not adequately investigate upon notice of the alleged harassing behavior, *see, e.g. Radtke*, and (3) if the employer is also the harasser, the employer can be held liable without proof of respondeat superior, *see, e.g. Radtke*. In this case, Plaintiff seeks to hold Bamishe (who is not alleged to have sexually harassed Plaintiff) liable for Ogunleye's harassment, presumably on the theory that Bamishe, as a 50% owner of Defendant Heritage and as an individual with significant control over all decisions made at Defendant Heritage, was an employer under the ELCRA along with Defendant Heritage. There is some support for this theory of liability in *Radtke* where the Court found that the Defendant, Dr. Everett, the 50% co-owner of co-Defendant Clarke-Everett Dog and

Cat Hospital, was plaintiff's employer along with the Dog and Cat Hospital: "In the instant case, the record clearly reveals that Everett, individually, as well as defendant Clarke-Everett Dog and Cat Hospital, were employers of plaintiff. They possessed the ability to hire and fire plaintiff and to control her working conditions, maintained her discipline, paid her wages, and owned the corporation that employed her." 442 Mich. at 399. Although Everett, and not his co-owner Clarke, was the individual actually accused of the harassing conduct, the Michigan Supreme Court defined Everett as an employer not based on his conduct toward the plaintiff but on his ability to control the terms and conditions of plaintiff's employment. The plaintiff in *Radtke* did not attempt to hold co-owner Clarke vicariously liable for his partner's conduct so the precise issue presented in the instant case was not addressed. However, the Court is inclined to find that Bamishe, like Ogunleye, meets the definition of an employer under the ELCRA as that term was defined by the Michigan Supreme Court in *Radtke*. When asked to describe her job duties, Bamishe testified as follows: "In a nutshell, I oversee the full operation of the company . . . whatever you want to put in there, I oversee everything. . . . I always work directly with [] employee regardless of the middle person or not. . . ." (ECF No. 22, App. to Def.'s Mot. Ex. 4, Bamishe Dep. p. 27-28.) She testified that she was "the overall supervisor" with the authority to hire, fire, discipline and also to control employee wages. *Id.* pp. 27-29. Surely this is precisely the type of control that the court in *Radtke* found sufficient to qualify co-owner Everett as an employer under the ELCRA along with the Dog and Cat Hospital that he owned. As an employer then, Bamishe, like Defendant Heritage, can escape liability for the conduct of Defendant Ogunleye only if she adequately investigated the allegations brought to her

12

attention and took prompt remedial action to address the harassment.[3]

To hold either Defendant Bamishe or Heritage liable under the ELCRA on her hostile work environment claim, Plaintiff must satisfy the *respondeat superior* element. "Under the Michigan Civil Rights Act, an employer may avoid liability 'if it adequately investigated and took prompt remedial action upon notice of the alleged hostile work environment.'" *Radkte*, 422 Mich. at 396 (citing *Downer v. Detroit Receiving Hosp.*, 191 Mich. App. 232, 234 (1991)). After Plaintiff reported the alleged sexual harassment to Defendant Bamishe, Defendant Bamishe claims to have installed surveillance cameras, revised the employee handbook regarding sexual harassment, and interviewed Plaintiff's co-workers about Plaintiff's allegations. Under Michigan law, "the relevant inquiry concerning the adequacy of the employer's remedial action is whether the action reasonably served to prevent future harassment of the Plaintiff." *Chambers v. Trettco*, 463 Mich. 297, 319 (2000). Plaintiff testified at her deposition that the harassment did not stop after the December 9, 2008 meeting when Plaintiff reported the behavior. (ECF No. 33, Pl.'s Resp. Ex. A, Deposition of

---

[3] An interesting question presents itself in a case, like the instant case, involving two equal co-owners in a business. Although the Michigan Supreme Court in *Radtke* defined the defendant as an employer based on his 50% ownership of the business and his ability to control the conditions of plaintiff's employment, the court also recognized that defendant's 50% partner, Dr. Clarke, "was powerless to alter the behavior of Everett because he was only an equal shareholder in the corporation," concluding that recourse to Dr. Clarke would have been fruitless. *Radtke*, 442 Mich. at 396 n.43. This dicta suggests that Michigan courts might conclude that in some circumstances an equal partner such as Bamishe might otherwise be able to avoid liability on a hostile work environment claim where it could be shown that although by definition an "employer" under the ELCRA, the co-owner was powerless to alter the behavior of his or her partner, precluding a finding of liability against him or her. In this case, however, Bamishe has testified that she was the ultimate authority at Defendant Heritage and that not only that she did have the power to rectify the situation, she claims that she adequately investigated and adequately remedied the situation. On the facts in the instant case it appears that although Ms. Bamishe and Mr. Ogunleye were equal owners of Defendant Heritage, Ms. Bamishe called the shots and that, by her own admission, she was not powerless to alter the behavior of her partner.

13

Kanica Harris, June 7, 2011, p. 39.) Ms. Bamishe confirmed that Plaintiff continued to complain about Defendant Ogunleye's harassing contact with her even after the December 9, 2008 meeting. (ECF No. 33, Pl.'s Resp. Ex. D, Deposition of Anthonia Bamishe, Sept. 14, 2011, p. 134.) Accordingly, viewing the facts in the light most favorable to the Plaintiff, the Court concludes that there are remain genuine issues of material fact as to whether Defendant Bamishe adequately investigated Plaintiff's allegations and took prompt remedial action. Accordingly, Count IV will proceed against Defendants Bamishe and Heritage.

C.  **Retaliation**

Both the ELCRA and Title VII prohibit retaliation against an employee for complaining about discrimination and both require Plaintiff to establish the same *prima facie* case. In order to make out a *prima facie* case for retaliation under Title VII and ELCRA, the plaintiff must demonstrate that: (1) she engaged in protected activity; (2) the defendant was aware the plaintiff engaged in that activity; (3) the defendant took an adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse action. *Nguyen v. City of Cleveland*, 229 F.3d 559, 562-63 (6th Cir. 2000). If the plaintiff establishes a *prima facie* case for retaliation, the analysis follows the same *McDonnell Douglas/Burdine*[4] burden-shifting framework as disparate treatment claims. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 545 (6th Cir. 2008).

In the instant case, prongs one and three of the *prima facie* case are not in dispute: Plaintiff engaged in protected activity when she reported the alleged sexual harassment to Defendant Bamishe

---

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). The parties appear to agree that Plaintiff's claims allege retaliation based on circumstantial, not direct, evidence.

14

and also when she reported it to the EEOC, and Defendants took an employment action adverse to Plaintiff when they fired her. In regards to the second prong, Defendants argue that they did not know about the EEOC Charge of Discrimination until after Defendants terminated Plaintiff. In support of their argument, Defendants submit an EEOC Charge of Discrimination dated February 23, 2009, twelve days after Defendants terminated Plaintiff. Plaintiff, however, has submitted an EEOC Charge of Discrimination dated January 26, 2009. Thus, there is a genuine issue of material fact as to whether Defendants knew of Plaintiff's report to the EEOC. Moreover, Defendants obviously were aware of Plaintiff's allegations that she brought directly to their attention through her complaints to Defendant Bamishe. Accordingly, viewing the facts in the light most favorable to the Plaintiff, as the Court must do at this summary judgment stage, Plaintiff has established the third prong.

The fourth prong is satisfied because Defendants took the adverse employment action very close in time after learning about the protected activity. *See Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a casual connection for purposes of satisfying a prima facie case of retaliation."). As previously discussed, it is unclear when Defendants received the EEOC's Charge of Discrimination. The Charge of Discrimination submitted by Plaintiff indicates that Defendants had to respond to the Charge by February 16, 2009, suggesting that they received it sometime before February 11, 2009, the date on which they fired Plaintiff. Thus, taking the evidence in the light most favorable to Plaintiff, Plaintiff has established the existence of a casual connection between the protected activity and the adverse employment action.

15

Because Plaintiff has made out a *prima facie* case, the burden shifts Defendants to articulate a "legitimate, nondiscriminatory reason" for the adverse action. *Burdine*, 450 U.S. at 252-53. Defendants submitted evidence that Plaintiffs work began to suffer around the same time she first came forward with the allegations of sexual harassment, and it was then they fired Plaintiff because of her poor work performance and not in retaliation of alleging sexual harassment. Therefore, Defendants have articulated a nondiscriminatory reason for terminating Plaintiff.

The burden then shifts to Plaintiff to demonstrate that Defendants' stated reason for terminating Plaintiff is merely a pretext. *Burdine*, 450 U.S. at 256. To establish pretext, Plaintiff may show "that the proffered reason (1) has no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to warrant the adverse action." *Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 558 (6th Cir. 2009) (quoting *Ladd v. Grand Trunk W.R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009)).

Plaintiff informed Defendants of the alleged sexual harassment on December 9, 2008. Defendants have submitted evidence that Plaintiff's job performance steadily declined around the same time. Plaintiff, however, has submitted evidence that she had been given very positive feedback about her job performance until December of 2008. Only beginning in December 2008, did Defendants begin to document issues with Plaintiff's work, including giving her several reprimands and ultimately firing her on February 11, 2009. Thus, Plaintiff has met her burden of demonstrating that genuine issues of fact remain as to Defendants' stated reason for terminating her employment.

D.   **Mitigation of Damages**

Plaintiff testified that she interviewed with another home health care agency in January of

2009, and received an offer as a result of that interview. During a medical examination on January 12, 2009, Plaintiff allegedly told the examiner that she had another job lined up, but that her lawyer recommended that she remain at her job with Heritage. Defendants argue that by not accepting the offer of employment with the other home health care agency, Plaintiff has failed to mitigate her damages. While an employee has a duty to mitigate damages by seeking substantially equivalent employment, *see, e.g. United States v. City of Warren, Mich.*, 138 F.3d 1083, 1098 (6th Cir. 1998), the duty "operates to prevent claimants from recovering for damages which they could have avoided through reasonable diligence." *Id.* (quoting *Rasimas v. Mich Dept. Of Mental Health*, 714 F.2d 614, 623 (6th Cir. 1983)). Defendant has offered no authority to support the proposition that Plaintiff was obligated to quit her job after reporting the alleged sexual harassment and obtain alternate employment in order to mitigate damages. Plaintiff's lost wages could not begin to accrue until she was wrongfully terminated, so there would be no damages for her to mitigate before that time. Thus, Plaintiff was not obligated to mitigate her damages for any period of time before she was allegedly wrongfully terminated.

## IV. CONCLUSION

For the foregoing reasons, Counts I, III, and V are dismissed as to Defendants Bamishe and Ogunleye because Title VII does not allow for individual liability. Count II is dismissed as to Defendant Bamishe because, as Plaintiff agrees, Bamishe did not discriminate against Plaintiff because of Plaintiff's gender. Accordingly, Count I (sex discrimination under Title VII) proceeds against Defendant Heritage; Count II (sex discrimination under ELCRA) proceeds against Defendants Heritage and Ogunleye; Count III (hostile work environment under Title VII) proceeds against Defendant Heritage; Count IV (hostile work environment under ELCRA) proceeds against

Defendants Heritage Ogunleye and Bamishe; Count V (retaliation under Title VII) proceeds against Defendant Heritage; and Count VI (retaliation under ELCRA) proceeds against Defendants Heritage, Ogunleye and Bamishe.

IT IS SO ORDERED.

Dated: MAR 29 2013

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE